# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: B.N.

No. 16-1098 (Raleigh County 16-JA-009-K)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father L.N., by counsel Stephen P. New, Stacey L. Fragile, and Amanda Taylor, appeals the Circuit Court of Raleigh County's October 17, 2016, order terminating his parental rights to B.N.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Colleen M. Brown-Bailey, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in ratifying the amended petition upon insufficient evidence and in proceeding to adjudication and disposition upon that same insufficient evidence. Petitioner also alleges that the circuit court violated his due process rights by requiring him to submit to drug screens.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2016, the DHHR filed an abuse and neglect petition based on aggravated circumstances due to the mother's prior involuntary termination of parental rights to older children. Moreover, the petition alleged that the mother abused drugs while pregnant with B.N., as evidenced by hospital staff reporting that the child was exhibiting signs of drug withdrawal. Upon a Child Protective Services ("CPS") investigation, the mother admitted that she used Xanax and Methadone while pregnant with the child. The CPS worker also spoke with petitioner, who indicated that he did not live with the mother and was unaware of her drug use during pregnancy. The CPS worker told petitioner that she would need to do a walkthrough of his residence before the child could return home with him from the hospital. Petitioner stated that he would provide his address shortly, but never provided the same. Eventually, when the child was ready to be released, CPS contacted petitioner to ask for his address, and he declined to provide

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

it. Instead, petitioner provided the address of the child's relatives and told CPS that the home would be appropriate for the child. Accordingly, CPS contacted the child's great-aunt, conducted a home study, and the child was subsequently placed with the relatives.

At a multidisciplinary team ("MDT") meeting in March of 2016, petitioner again failed to provide CPS with his address. During the meeting, CPS reiterated that petitioner would be considered for placement of the child as soon as he provided an address that could be inspected for appropriateness. During this meeting, CPS also asked for petitioner to provide a list of current prescribed medications. According to the guardian, petitioner indicated that he was taking oxycodone, but that he would not be obtaining any new prescriptions for the drug because his prescribing physician was closing his practice. At this time, the guardian requested that petitioner submit to a drug screen to establish a baseline for the medications he was currently taking. Petitioner indicated that he would provide drug screens from his employer. Importantly, petitioner was represented by counsel at this meeting and voluntarily agreed to provide the DHHR with drug screen results in lieu of submitting to a drug screen.

In May of 2016, the DHHR filed an amended petition that included allegations against petitioner based on his refusal to provide the DHHR with his address. The DHHR further alleged that petitioner failed to submit to a drug screen as agreed to at the MDT meeting. Moreover, the DHHR alleged that petitioner had recently been arrested following a domestic violence incident involving the mother. That same month, petitioner filed a petition for writ of mandamus requesting the child be placed in his custody immediately.[2] According to petitioner, he contacted the DHHR in an attempt to provide his address during this period, but spoke with a supervisor who failed to convey that information. Regardless, the record shows that the DHHR did not obtain petitioner's address until June 2, 2016.

On June 10, 2016, the circuit court held a preliminary hearing on the amended petition with regard to petitioner. During the hearing, a DHHR worker testified to concerns that petitioner was still in a relationship with the mother and may have possibly been living with her. This was further bolstered by petitioner's failure to provide the DHHR with an address and his recent

---

[2]It is unclear from the record if a ruling on petitioner's petition for writ of mandamus was ever issued. Moreover, petitioner does not allege error herein with regard to the events which transpired prior to the DHHR's filing of the amended petition against him. To whatever extent petitioner's assignments of error purport to subsume this issue, we find that his remedy was to seek a ruling on his writ of mandamus or, in the event such a ruling was actually made and was adverse to him, to appeal that ruling to this Court. Having failed to properly bring the issue before this Court when it was a "live" controversy, and in light of the intervening termination of his parental rights, the issue has been rendered moot: "[M]ootness may occur when the circumstances of the case change during the course of its pendency . . . [or] when the parties thereto experience a change in status." *State ex rel. Bluestone Coal Corp. v. Mazzone*, 226 W.Va. 148, 155-56, 697 S.E.2d 740, 747-48 (2010) (citations omitted). "Moot questions or abstract propositions, the decision of which would avail nothing in the determination of controverted rights of persons or of property, are not properly cognizable by a court." Syl. Pt. 1, *State ex rel. Lilly v. Carter*, 63 W.Va. 684, 60 S.E. 873 (1908).

arrest for domestic violence involving the mother. The circuit court also heard evidence concerning petitioner's failure to submit to the agreed upon drug screening, necessitated by numerous referrals to the DHHR that petitioner was abusing prescription medication. Ultimately, the circuit court found probable cause to leave the child in the DHHR's custody. Moreover, the circuit court specifically ordered petitioner to submit to drug screening in compliance with his prior agreement to the same. Finally, the circuit court ordered the DHHR to determine whether petitioner was, in fact, living with the mother.

In July of 2016, the circuit court held an adjudicatory hearing. Petitioner did not attend the hearing, although he was represented by counsel. Based upon petitioner's failure to submit to drug screens and his recent arrest, the circuit court found that petitioner neglected the child.

In August of 2017, the circuit court held a dispositional hearing. Again, petitioner failed to appear in person but was represented by counsel. During the hearing, petitioner's counsel represented to the Court that petitioner had again moved residences and that counsel was unaware of the address. The circuit court then found that petitioner failed to keep in contact with his counsel and that the only drug screen to which petitioner submitted was positive for marijuana. Based on these factors, the circuit court terminated petitioner's parental rights to the child.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error. On appeal, petitioner argues that the circuit court erred in ratifying the amended petition upon insufficient evidence and in proceeding to adjudication and disposition upon the same

---

[3]According to the DHHR, as of the filing of its response brief, both parents' parental rights to the child were terminated below. The child currently resides with his maternal great-aunt and great-uncle. Because all parental rights were terminated below, respondents state that the permanency plan for the child, as of the filing of their briefs, is adoption into this relative placement.

insufficient evidence. He also alleges that the circuit court violated his due process rights by requiring that he submit to drug screens in the absence of any allegations of substance abuse. The Court, however, does not agree.

First, the Court finds no error in the circuit court proceeding on the amended petition at the preliminary hearing. On appeal, petitioner argues that the DHHR "undertook a pattern of harassment of [p]etitioner and abused its discretion in filing the [a]mended [p]etition after a lengthy delay." Petitioner further argues that the DHHR's amended petition was deficient, as it failed to allege sufficient facts to establish abuse or neglect, especially considering that the allegations contained therein did not relate back to the time at which the case was initiated. Petitioner further argues that the DHHR failed to meet its burden of establishing probable cause at the preliminary hearing. We do not agree.

According to West Virginia Code § 49-4-601, an abuse and neglect petition "shall allege specific conduct including time and place, how the conduct comes within the statutory definition of neglect or abuse with references thereto . . . [,]" among other requirements. Contrary to petitioner's argument that the amended petition was deficient, the record is clear that it alleged legitimate grounds of abuse and/or neglect against petitioner, including his refusal to comply with drug screens as agreed, his recent arrest for domestic battery against the mother, and his inability to provide the DHHR with an address for a suitable home for the child. As such, we find that the same was sufficient for the circuit court to proceed upon.

Moreover, according to West Virginia Code § 49-4-303, prior to the filing of an abuse and neglect petition,

> a child protective service worker may take the child . . . into his or her custody (also known as removing the child) without a court order when . . . [t]he worker has probable cause to believe that the child . . . will suffer additional child abuse or neglect or will be removed from the county before a petition can be filed and temporary custody can be ordered.

That statute goes on to require that

> [a]fter taking custody of the child . . . prior to the filing of a petition, the worker shall forthwith appear before a circuit judge or referee of the county where custody was taken and immediately apply for an order . . . . This order shall ratify the emergency custody of the child pending the filing of a petition.

In the instant matter, the DHHR alleged that the child was likely to suffer additional abuse or neglect by petitioner due to his failure to confirm a suitable home for the child, his failure to submit to drug screening as agreed upon, and his recent arrest for domestic violence. At the preliminary hearing, the circuit court heard substantial evidence in support of these allegations.

Most importantly, a DHHR worker testified to concerns that petitioner was still in a relationship with the mother and may have possibly been living with her. While the petition did not specifically include the allegation that petitioner was cohabitating with the mother, it did

allege that he failed to provide an address so that the DHHR could assess the appropriateness of his living situation. Obviously, given the mother's prior involuntary termination of parental rights to older children and eventual termination of parental rights to B.N., if petitioner lived with her, then he lacked a suitable home for the child. Moreover, the circuit court also heard evidence concerning petitioner's failure to submit to the agreed upon drug screening. While petitioner argues that the DHHR had no reason to suspect petitioner abused drugs, the record shows that the DHHR received numerous referrals that petitioner was abusing prescription medication. Given petitioner's failure to provide the DHHR with an address until June 2, 2016, and his failure to submit to drug screens as agreed upon, it is clear that probable cause existed to ratify the DHHR's emergency custody of the child. Because the DHHR could not verify the appropriateness of petitioner's home or whether he was abusing drugs, it would have been inappropriate to release the child to his custody.

Petitioner similarly argues that the circuit court lacked sufficient evidence upon which to base his adjudication and termination of his parental rights. Essentially, petitioner argues that because the evidence at the preliminary hearing was insufficient, the circuit court lacked an evidentiary basis for both the later determinations. Again, we do not agree. Importantly, petitioner ignores the fact that he failed to appear in person for either hearing. Moreover, at the time of the adjudicatory hearing, petitioner still had not submitted to drug screening, which, by that point, was ordered by the circuit court. Pursuant to West Virginia Code § 49-1-201, a neglected child is one "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary food, clothing, shelter, supervision, medical care or education . . . ." Again, by the time of the adjudicatory hearing, the DHHR was unable to determine if petitioner's house was appropriate for the child. Moreover, the DHHR still could not determine if petitioner exhibited issues with substance abuse because of his refusal to submit to drug screens.

We have previously held that

> "W.Va.Code, 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (internal citations omitted). Here, the DHHR proved that petitioner was presently unable to supply the child with necessary shelter, as evidenced by petitioner's extended delay in providing the DHHR with an address and his subsequent move to a new address, as proffered by counsel. As such, it is clear that the DHHR established, by clear and convincing evidence, that petitioner neglected the child.

As to disposition, the record is similarly clear that the circuit court was presented with sufficient evidence upon which to base termination of his parental rights. By this point, it was clear to the circuit court that petitioner had essentially abandoned the proceedings, having failed to attend either the adjudicatory hearing or the dispositional hearing and submitted to only one

drug screen that was positive for marijuana. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

Based upon petitioner's almost complete noncompliance with the DHHR's efforts, including his extended failure to comply with a request as basic as providing an address, it is clear that the circuit court was presented with sufficient evidence that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected. Moreover, the circuit court was presented with substantial evidence that termination of petitioner's parental rights was necessary for the child's welfare, given his lack of effort to obtain custody of the child. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings.

Finally, the Court finds no merit to petitioner's argument that the circuit court's requirement that he submit to drug screens in the absence of allegations of substance abuse violated his due process rights. Importantly, petitioner's argument ignores the numerous referrals the DHHR received regarding his alleged abuse of prescription medication and his own agreement to submit to screening. Given that petitioner, with the representation of counsel, agreed to submit to drug screens, this Court cannot find a violation of his due process rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 17, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**:  May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker